UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TONY FRENCH,

                Plaintiff,

    v.

CLALLAM BAY CORRECTIONS
CENTER ET AL.,

                Defendants.

Case No. C26-5230-TMC-SKV

ORDER DECLINING TO SERVE

This is a *pro se* civil rights action proceeding under 42 U.S.C. § 1983. Tony French ("Plaintiff") is currently confined at the Washington Corrections Center in Shelton, Washington. He has submitted to the Court for filing a civil rights complaint in which he alleges he was denied a specific work assignment based on his race while housed at Clallam Bay Corrections Center. *See* Dkt. 1-1 at 8. The Court has now screened Plaintiff's Complaint and has identified deficiencies that Plaintiff must correct before this action may proceed. The Court therefore declines to order that Plaintiff's Complaint be served, but grants Plaintiff leave to file an amended complaint correcting the deficiencies identified below.

///

///

ORDER DECLINING TO SERVE - 1

## I.       BACKGROUND

Plaintiff seeks to bring claims against various individuals ("Defendants"):  Julieann Smith, Associate Superintendent; Adele Roman, Job Coordinator; Jaime Simmons, G Unit Counselor; Kaci Paul, G/H CUS; Jerry McHaffie, Sergeant G/H; Russel Davis, Corrections Officer G/H, Jeri Boe, Superintendent; J. Echeita, CPM; Eddie Reetz, Superintendent; Cheryl Hatt, CI Laundry; Judy Brown, CI Laundry; and Jesse Pearson, H Unit Counselor.  *See id.* at 3– 7.  Plaintiff's proposed Complaint consists of two counts asserting violations of the Fourteenth and Eighth Amendments for alleged race-based denial of a specific work assignment sought by Plaintiff.  *See id.* at 8, 19.  Plaintiff seeks compensatory and punitive damages.  *See id.* at 23.

Plaintiff alleges that he is a Black inmate and worked in the Clallam Bay Corrections Center laundry for approximately one year.  *See id.* at 8–9.  He alleges that, on July 1, 2025, he sent a message to Defendant Roman, Job Coordinator, to ask that she "open . . . [his] referral for all jobs[,]" and she did so.  *Id.* at 9.  Plaintiff further alleges that he spoke with Defendants McHaffie, Sergeant G/H, and Davis, Corrections Officer G/H, to get hired as a G/H Corridor Porter when that job became available.  *See id.*  He avers that Defendant McHaffie advised him to have his supervisors in the laundry, Defendants Brown and Hatt, drop him from the laundry so he could be hired.  *See id.*  Plaintiff states he was dropped from the laundry and hired by Defendant Davis as a G/H Corridor Porter.[1]  *See id.*  Just as Plaintiff commenced work, Defendant Davis asked him to visit Defendant Simmons, the G Unit Counselor.  *See id.* at 10. When he did so, Defendant Simmons informed Plaintiff that he could not have the G/H Corridor Porter position because such "inside unit jobs" were reserved for inmates who could not work

---

[1] As discussed below, Plaintiff also alleges that he was not dropped from the laundry because he had to provide notice and have a supervisor complete certain paperwork.  *See* Dkt. 1-1 at 11.

ORDER DECLINING TO SERVE - 2

outside the unit.  *See id.*  As Plaintiff could work outside the unit, Defendant Simmons offered Plaintiff alternative jobs.  *See id.*

Plaintiff alleges that he then spoke to Defendant Davis about the issue, and Defendant Davis informed him that he would speak with Defendant McHaffie and Defendant Pearson, H Unit Coordinator, and Defendant Paul, G/H CUS, about Plaintiff being able to have the job.  *See id.* at 11.  Plaintiff asserts that Defendant Davis told him that Defendants McHaffie, Simmons, Pearson, and Paul were all onboard with Plaintiff having the G/H Corridor Porter job.  *See id.*  Plaintiff then sent a message to Defendant Roman asking her to "please open up my refer[al] for staff kitchen, and the janitor position here and every other job also please take me of[f] the call out for laundry[.]"  *Id.*  After following up about being dropped from the laundry, Plaintiff alleges that Defendant Roman told him that he would need to provide notice to his supervisors and have them complete certain paperwork.  *See id.*  He also states that Defendant McHaffie told him that Defendant Roman was "the issue" for not opening Plaintiff's referral for the G/H Corridor Porter job.  *Id.*

Plaintiff alleges that a white inmate, "John Doe," who previously worked with Plaintiff in the laundry and had a similar prison record began working as the G/H Corridor Porter.  *See id.* at 12, 14–16.  During follow-up communications with Defendant Roman, Plaintiff asserts that she told him she could not open his referral for the G/H Corridor Porter job and explained that "[i]ndividuals that are minimum custody and are approved to work outside of the unit will no longer be able to work unit positions.  Unit positions are considered entry level positions."  *Id.* at 13.

Plaintiff complained of racial discrimination.  *See id.* at 15.  He sent a message to Defendant Roman to ask if it was true that she opened a referral for a white man to get the G/H

Corridor Porter job. *See id.* Defendant Roman responded, "This was at the direction of Associate [Superintendent] Smith. I do not discriminate against anyone." *Id.* Plaintiff then sent a message to Defendant Smith asking why he was discriminated against. *See id.* Defendant Smith responded that the intent was to ensure individuals who cannot obtain employment outside of their units or require closer supervision had employment opportunities, that she was not familiar with Plaintiff's situation, and that he should speak to Defendant McHaffie about in-unit jobs. *See id.* Defendant McHaffie referred Plaintiff to Defendant Davis, who Plaintiff alleges told him that "they hired or trying [sic] to hire a white inmate[]" for the G/H Corridor Porter position. *Id.* at 15–16. Plaintiff was offered other positions and ultimately "decide[d] to be a rec. proter [sic] in the gym[.]" *Id.* at 16. Plaintiff filed various complaints about the incident, and Defendant Echeita, CPM, interviewed him. *See id.*

## II.    DISCUSSION

### A.    Legal Standards

Under the Prison Litigation Reform Act of 1996, the Court is required to screen complaints brought by prisoners seeking relief against a governmental entity, officer, or employee. *See* 28 U.S.C. § 1915A(a). The Court must "dismiss the complaint, or any portion of the complaint, if the complaint[:] (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2); *see also Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

Rule 8(a) of the Federal Rules of Civil Procedure provides that in order for a pleading to state a claim for relief it must contain a short and plain statement of the grounds for the court's jurisdiction, a short and plain statement of the claim showing that the pleader is entitled to relief,

ORDER DECLINING TO SERVE - 4

and a demand for the relief sought.  The statement of the claim must be sufficient to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  The factual allegations of a complaint must be "enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In addition, a complaint must allege facts to state a claim for relief that is plausible on its face.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In order to sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show that (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state law.  *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of.  *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir. 1978)).  "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).  Vicarious liability may not be imposed on a supervisory employee for the acts of their subordinates in an action brought under § 1983.  *See Lemire v. California Dep't of Corrs. & Rehabilitation*, 726 F.3d 1062, 1074 (9th Cir. 2013).  A supervisor may, however, be held liable under § 1983 "if he or she was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation." *Jackson v. City of Bremerton*, 268 F.3d 646, 653 (9th Cir. 2001).

ORDER DECLINING TO SERVE - 5

B.    Deficiencies

1.    *Improper Defendants*

Plaintiff makes no allegations against Defendant Boe, Superintendent, or Defendant Reetz, Superintendent.  If Plaintiff wishes to pursue his claims against these supervisory Defendants, he must allege facts showing that each was personally involved in the constitutional deprivations or that a sufficient causal connection exists between those supervisors' unlawful conduct and the constitutional violation.

2.    *Fourteenth and Eighth Amendment Claims*

Plaintiff asserts that Defendants violated his Fourteenth Amendment right to equal protection and his Eighth Amendment right to be free from cruel and unusual punishment because a white inmate got a job for which Plaintiff was rejected.  Plaintiff's allegations in support of those claims do not suffice.

First, Plaintiff's allegations against various Defendants do not indicate wrongdoing or support his claims.  Plaintiff alleges that Defendant Simmons merely informed him of the "inside unit" jobs policy and that Defendants McHaffie and Davis supported his candidacy and spoke to Defendants Pearson and Paul to advocate for him.  Plaintiff alleges that Pearson and Paul supported him having the job.  The only alleged act by Defendant Echeita is interviewing Plaintiff after Plaintiff filed complaints.  With respect to Defendants Hatt and Brown, Plaintiff makes contradictory allegations regarding whether he was dropped from his job in the laundry.  None of these acts by any of these Defendants were discriminatory, and many were favorable or neutral to Plaintiff, not harmful.  Only the individuals who caused or personally participated in causing harm alleged in the Complaint may be identified as defendants.  If Plaintiff submits an amended complaint, he must remedy these defects by setting forth facts demonstrating when,

ORDER DECLINING TO SERVE - 6

where, and how each Defendant personally participated in causing violations of his constitutional rights.

Second, Plaintiff's allegations against Defendants Smith and Roman are conclusory and do not indicate racially discriminatory intent. Plaintiff alleges that Defendants Smith and Roman prevented him from getting his desired work assignment pursuant to a policy that purported to reserve in-unit jobs for inmates restricted to their units and inmates that required more supervision. Plaintiff concludes that Defendants Smith and Roman allowed a similarly situated white inmate to be hired instead of Plaintiff due to Plaintiff's race.

The Equal Protection Clause of the Fourteenth Amendment prohibits a state from denying to "any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To state an equal protection claim, "a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren*, 152 F.3d at 1194–95 (citations omitted). That is, a plaintiff must show defendants engaged in the acts alleged because the plaintiff belongs to an identifiable, protected group or class. *See, e.g.*, *Washington v. Davis*, 426 U.S. 229 (1986) (racial discrimination). Alternatively, under a "class of one" theory, a plaintiff must show defendants "intentionally treated him differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff identifies a rational, nondiscriminatory policy that disqualified him from his desired work assignment and notes a host of alternative jobs offered to him. In support of his assertion that the white inmate hired as G/H Corridor Porter was similarly situated to him, he relies only on his opinion that "John Doe" had a similar prison record and had worked in the

ORDER DECLINING TO SERVE - 7

laundry at some point.  Plaintiff puts forth no allegations that plausibly indicate that, at the time "John Doe" was hired, he was similarly situated to Plaintiff or that the in-unit jobs policy was a pretext for discriminating against him.  Plaintiff's allegation that Defendant Davis told him that "they hired or trying [sic] to hire a white inmate[]" for the G/H Corridor Porter position does not indicate whether Defendants Smith and Roman, or any other named Defendants, made the hiring decision at issue.  *Id.* at 16.  It also does not indicate whether any Defendants *sought* to hire a white inmate over qualified inmates of other races.  If Plaintiff chooses to file an amended complaint, he must allege facts that demonstrate the Defendants acted with racially discriminatory intent.

The Eighth Amendment imposes a duty upon prison officials to provide humane conditions of confinement.  *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  This duty includes ensuring that inmates receive adequate food, clothing, shelter, and medical care, and taking reasonable measures to guarantee the safety of inmates.  *See id.*  In order to establish an Eighth Amendment violation, a prisoner must satisfy a two-part test containing both an objective and a subjective component.  The Eighth Amendment standard requires proof that: (1) the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation; and (2) the prison official acted with a sufficiently culpable state of mind.  *Id.* at 834.

The objective component of an Eighth Amendment claim is "contextual and responsive to 'contemporary standards of decency.'"  *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).  The state of mind requirement under the subjective component of the Eighth Amendment standard has been defined as "deliberate indifference" to an inmate's health or safety.  *Farmer*, 511 U.S. at 834.  Under the "deliberate indifference" standard, a prison official cannot be found liable for denying an inmate humane

ORDER DECLINING TO SERVE - 8

conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety. *Id*. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*.

Plaintiff relies upon the same allegations in support of his Eighth Amendment claim as his equal protection claim. *See* Dkt. 1-1 at 19. He does not allege acts by any defendants that threatened his health or safety and thus has not met the above standard. If Plaintiff chooses to file an amended complaint relying on the same allegations, he should not include a claim under the Eighth Amendment.

III.    CONCLUSION

Because of the deficiencies identified above, the Court declines to direct that Plaintiff's Complaint be served on Defendants. However, Plaintiff is granted leave to file an amended complaint curing the above noted deficiencies within **thirty (30) days** of the date on which this Order is signed. Plaintiff must ensure that any amended complaint carries the same case number as his original Complaint. If no amended complaint is timely filed, or if Plaintiff fails to correct the deficiencies identified above, the Court will recommend that this action be dismissed pursuant to 28 U.S.C § 1915A(b)(1) and 28 U.S.C. § 1915(e)(2)(B).

Plaintiff is advised that an amended pleading operates as a *complete* substitute for an original pleading. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992) (citing *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1990)). Thus, any amended complaint must clearly identify each intended Defendant, the constitutional claim(s) asserted against each Defendant, the specific facts and actions by each Defendant which Plaintiff believes support each claim, and the specific relief requested.

ORDER DECLINING TO SERVE - 9

While Plaintiff lists Clallam Bay Corrections Center in the case caption, he does not list the facility as a defendant or bring any claims against it. *See* Dkt. 1-1 at 1, 3, 5–7. The Clerk is directed to remove Clallam Bay Corrections Center from the docket and case caption. The Clerk is further directed to send Plaintiff the appropriate forms so that he may file an amended complaint. Finally, the Clerk shall send copies of this order to the parties and to the Honorable Tiffany M. Cartwright.

Dated this 2nd day of April, 2026.

S. KATE VAUGHAN
United States Magistrate Judge

ORDER DECLINING TO SERVE - 10